# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RMS OF WISCONSIN, INC.,**

    **Plaintiff,**

    **v.**                                                                                              Case No. 13-CV-1071

**SHEA-KIEWIT JOINT VENTURE and
J.F. SHEA CONSTRUCTION,**

    **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFF'S MOTION TO COMPEL

---

On March 13, 2014, the plaintiff, RMS of Wisconsin, Inc., filed a second amended complaint against the defendants, Shea-Kiewit Joint Venture and J.F. Shea Construction, Inc. (collectively the "defendants"). (Second Am. Compl., Docket # 34.) In the second amended complaint, the plaintiff, a subcontractor who is a certified minority and/or women owned business by the City of Indianapolis, alleges fraud in the inducement and breach of contract against the defendants stemming from a subcontractor agreement it entered into with the defendants. (*Id.*) The plaintiff alleges the defendants never intended to honor the contract, but rather used the plaintiff to fulfill a requirement imposed by the City of Indianapolis to employ women and minority owned business enterprises ("MBE/WBE"). (*Id.*) The defendants deny these allegations and have counterclaimed against the plaintiff for breach of the subcontractor agreement. (Defendants' Ans. and Countercl., Docket # 35.) Currently before the Court are the defendants' motion for a protective order and the plaintiff's motion to compel discovery. For the reasons stated below, the defendants' motion for a protective order is granted and the plaintiff's motion to compel is granted in part and denied in part.

## DISCUSSION

As previously stated, both parties have filed interrelated discovery motions. In its third request for production of documents, the plaintiff seeks production of communications between the defendants and Attorney Robert Fitzgerald from March 1, 2011 through September 23, 2013 that relate to the plaintiff, as well as three other companies. (Declaration of Mark M. Leitner ("Leitner Decl.") ¶ 5, Exh. A, Docket # 40-3.) The plaintiff also seeks production of all subcontract and payroll information (pertaining to employees who appear multiple times in any payroll) between the defendants and three other women and/or minority-owned business enterprises. (Leitner Decl., Exh. A at 6-7, Document Request Nos. 5-8.) Regarding Attorney Fitzgerald's communications, the defendants objected to the request for production of documents on the grounds that the request seeks production of information protected by the attorney-client privilege and work product immunity. (*Id.* at 5.) The defendants also objected to the request for subcontract and payroll information on the grounds that the request was overbroad and unduly burdensome and not likely to lead to the discovery of admissible evidence. (*Id.* at 6-7.) The defendants have moved for a protective order to prevent production of Attorney Fitzgerald's communications.

Shortly after the defendants moved for a protective order, the plaintiff sent a follow-up request for production of documents requesting production of communications between Attorney Fitzgerald and the defendants, for the last ten years, that relate to minority or women run business enterprises. (Exh. F to Pl.'s Br. in Supp. Mot. to Compel, Docket # 42-6.) Defendants responded that they were also objecting to this request for production on the grounds of attorney-client privilege and overbreadth as to time period and the nature of the request. (Declaration of Matthew M. Fernholz ("Fernholz Decl.") ¶ 7, Docket # 43.) Thus, the defendants moved to compel production of these

pre-litigation communications between Attorney Fitzgerald and the defendants, as well as the subcontract and payroll information in request numbers 5-8. I will address each in turn.

*1. Attorney Fitzgerald Communications*

Under Fed. R. Civ. P. 26(b)(1) parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." The information sought need not itself be admissible as long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The plaintiff does not dispute that the communications it seeks between Attorney Fitzgerald and the defendants are protected by attorney-client privilege. However, the plaintiff argues the documents should be produced pursuant to the "crime-fraud" exception to the attorney-client privilege. The parties agree that Wisconsin law governs the issue. *See* Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

Pursuant to Wis. Stat. § 905.03(4)(a), there is no attorney-client privilege if "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." In interpreting this statute, the Wisconsin Supreme Court has stated that the "mere allegation of fraud is insufficient" to vitiate the privilege. *Lane v. Sharp Packaging Systems, Inc.*, 2002 WI 28, ¶ 50, 251 Wis. 2d 68, 110, 640 N.W.2d 788, 807. In order to establish a *prima facie* case of fraud, the movant must show " 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.' " *Id.* (citing *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996)). Reasonable

cause is more than suspicion but less than a preponderance of evidence. *Id.* If the movant establishes a *prima facie* case that the crime-fraud exception applies, the documents are not automatically turned over to the party seeking them. *Id.* ¶ 55. Rather, the court will conduct an *in camera* review to determine if the crime-fraud exception applies. *Id.* (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)) ("An in camera review is appropriate, because it is a 'smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.'"). The *Lane* court noted that the burden "is low," in that a lesser evidentiary showing is needed to trigger *in camera* review than is required to ultimately overcome the privilege. *Id.* ¶ 50.

However, *Lane* indicates that some evidence must be submitted that, if believed, would establish an ongoing unlawful scheme. *Id.* ¶ 51. In *Lane*, the supreme court considered the allegations in the complaint, combined with evidence in the record—specifically deposition testimony and affidavits—in determining whether the movant established a *prima facie* case. *Id.*; *see also United States v. Boender*, 649 F.3d 650, 655-56 (7th Cir. 2011) (quoting *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007)) (finding that to establish the crime-fraud exception, the movant must "'present prima facie evidence that gives color to the charge by showing some foundation in fact.'")

The plaintiff relies on the fact that it survived a motion to dismiss its fraud in the inducement claim, thus arguing that it has shown, as a matter of law, that it has established a *prima facie* case of fraud. (Docket # 42 at 12.) The plaintiff further argues that it need not show that Attorney Fitzgerald was participating in the fraud and argues that depositions have established a *prima facie* case that J.F.Shea was committing fraud in Milwaukee. (Pl.'s Reply Br. at 7-8, Docket # 56.) It is not enough, however, to simply make a *prima facie* showing of fraud. The *Lane* court makes clear that to establish a *prima facie* case under the crime-fraud exception, the movant must show reasonable cause to believe

that the attorney's services were utilized in furtherance of the fraud. 2002 WI 28, ¶ 50. If this were not the case, the attorney-client privilege could be overcome anytime a claim of fraud survives a motion to dismiss.

The plaintiff presents only allegations and speculation regarding whether Attorney Fitzgerald's services were utilized in furtherance of an ongoing unlawful scheme. The plaintiff looks at a screen shot from Attorney Fitzgerald's firm's website listing the defendants as a client in February 2012 and states that "[p]erhaps at some point J.F. Shea approached Attorney Fitzgerald to discuss MBE/WBE requirements." (Docket # 42 at 12.) The plaintiff further asserts that "it would stand to reason" that during the bidding process the defendants would have consulted with Attorney Fitzgerald regarding "the legal ramifications of what could happen if the City of Indianapolis became aware that it was awarding sham subcontracts as part of its 'good faith' effort to comply with MBE and WBE goals." (*Id.* at 13.) Reasonable cause is more than suspicion and mere allegations are not enough. *Lane*, 2002 WI 28, ¶ 50. Some evidentiary support is necessary to trigger *in camera* review. *Id.* ¶ 51. Although the plaintiff points to the depositions of Eric Schauer, Jerry Straube, and Charles Kennedy as establishing a *prima facie* case, none of the deposition excerpts connect Attorney Fitzgerald to the alleged fraudulent scheme. (Docket # 42-3.) The plaintiff does not present anything beyond the existence of an attorney-client relationship and suspicions of Attorney Fitzgerald's role in the alleged fraud. Thus, the plaintiff has failed to establish a *prima facie* case that the crime-fraud exception applies and *in camera* review is not appropriate. Accordingly, the defendants' motion for a protective order is granted and the plaintiff's motion to compel production of Attorney Fitzgerald's communications is denied.

*2.    Subcontract and Payroll Information*

The plaintiff also seeks the subcontract and payroll information (pertaining to employees who appear multiple times in any payroll) for the last ten years between the defendants and three different women and/or minority-owned business enterprises, specifically Steppo Supply & Construction, Inc, Acura, Inc., and Abari, Inc. (Leitner Decl., Exh. A at 6-7, Document Request Nos. 5-8.) The defendants have produced agreements with their subcontractors on the Indianapolis Project (the subject of the dispute in this case), including a subcontract with Steppo, and have also agreed to produce payroll and other labor records for Acura's work on the Indianapolis Project if Acura begins its work while discovery is open in this case. (Defs.' Br. Opp. Mot. to Compel, Docket # 48 at 8.) However, the defendants argue that subcontract and payroll information for past projects that are not at issue in this case, i.e., any subcontract and payroll information unrelated to the Indianapolis Project, is not reasonably calculated to lead to the discovery of admissible evidence and is therefore not discoverable. *See* Fed. R. Civ. P. 26(b)(1).

The plaintiff argues that these requests may lead to the discovery of admissible "propensity" or "other acts" evidence under Fed. R. Evid. 404(b)(2). (Docket # 42 at 3.) Fed. R. Evid. 404(b)(1) states that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) states that the evidence may be admissible for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Seventh Circuit recently noted the "inherent tension" in Rule 404(b) because "other acts" evidence can serve several purposes at once, i.e., showing propensity, which is barred by Rule 404(b)(1), while at the same time showing one or more of motive, opportunity, intent, etc.

permitted by Rule 404(b)(2). *United States v. Gomez*, No. 12-1104, 2014 WL 4058963, *6 (7th Cir. Aug. 18, 2014). To "resolve this inherent tension," the court has "cautioned that it's not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at *7. Rather, the court "should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* at *8.

At this stage, the question is not whether the evidence is admissible under Rule 404(b), but whether the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The plaintiff has alleged a claim of fraud in the inducement. In Wisconsin, the elements of a cause of action for fraud in the inducement are: (1) the defendant made a factual representation; (2) the factual representation was false; (3) the defendant made the factual representation knowing that it was untrue or without caring whether it was true or false; (4) the defendant made the representation with intent to defraud or to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied upon that statement to its detriment. *Metavante Corp v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (7th Cir. 2010) (citing *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis.2d 555, 699 N.W.2d 205 (2005)).

The plaintiff argues that evidence of the defendants' past contracts and payroll information with other minority and/or women owed businesses is relevant to establishing the defendants' intent to defraud. (Pl.'s Reply Br., Docket # 56 at 6.) The scope of relevancy under Rule 26 is broad, *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 257 (E.D. Wis. 2013), and relevant information sought need not itself be admissible as long as the discovery appears reasonably calculated to lead

to the discovery of admissible evidence, Fed. R. Civ. P. 26(b)(1). Thus, the plaintiff has established that information regarding past subcontracts and payroll information regarding these three other women and/or minority owned businesses appears reasonably calculated to lead to the discovery of admissible evidence under Fed. R. Evid. 404(b)(2). Whether any evidence actually discovered is or is not ultimately admissible under *Gomez* is a motion for another day.

The defendants also argue that production of this discovery would be onerous in terms of the amount of payroll documents and hours needed to review the payroll records. Fed. R. Civ. P. 26(b)(2)(C)(iii) allows the court to limit the discovery if the burden or expense of the proposed discovery outweighs its likely benefit. However, the defendants do not speak as to the number of subcontracts the defendants entered into with Steppo, Acura, and Abari in the past ten years. Thus, it is not clear that production of these subcontracts would be onerous. Accordingly, I do not have sufficient information to impose any limits. Regarding the payroll information, the defendants have averred that these records comprise many thousands of pages and that identifying the names of employees who appear multiple times in any payroll will require hundreds of hours of work. (Declaration of Roger Standley ¶¶ 5-6, Docket # 50.) The plaintiff has stated that it is willing to undertake the burden of identifying names that appear multiple times in the payroll records. (Docket # 56 at 7.) The parties should confer and attempt to come to an arrangement regarding the production of these payroll records that is amenable to both parties. Additionally, the parties may submit a protective order in regards to the payroll records for the Court's approval.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for protective order (Docket # 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel (Docket # 41) is **GRANTED IN PART AND DENIED IN PART**. As to the communications between the defendants and Attorney Fitzgerald, the plaintiff's motion is denied. As to the subcontract and payroll information, the plaintiff's motion is granted.

Dated at Milwaukee, Wisconsin this 24th day of September, 2014.

BY THE COURT

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge