UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RMS OF WISCONSIN, INC.,

    Plaintiff,

    v.                                      Case No. 13-CV-1071

S-K JV and J.F. SHEA CONSTRUCTION,
INC.,

    Defendants.

---

## DECISION AND ORDER ON PLAINTIFF'S AND DEFENDANTS' *DAUBERT* MOTIONS

---

Before me are the plaintiff's, RMS of Wisconsin, Inc., and the defendants', S-K JV and J.F. Shea Construction, Inc., motions to exclude expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). RMS seeks to bar Stuart Lipofsky from testifying as an expert and to strike portions of the expert report of Terence Rodgers. (Docket # 84.) The defendants seek to exclude RMS' damages expert, Michael Betters. (Docket # 89.) For the reasons discussed below, the plaintiff's motion is granted in part and denied as moot in part and I will reserve judgment on the defendants' motion pending a *Daubert* hearing.

## BACKGROUND

The underlying facts of this case are detailed in this Court's decision and order granting both parties' motions for partial summary judgment. (Docket # 150.) For background purposes here, RMS performs excavating and shaft digging work and has performed this work for the defendants in the past. At issue in this case is a subcontract

agreement entered into by the parties for the Indianapolis Deep Tunnel Project. As part of its bid to get the contract on the Deep Tunnel Project, the defendants warranted that they would make a good faith effort to award a percentage of their subcontracting dollars to "minority business enterprises," which includes "women-owned business enterprises." RMS has been certified as a women-owned business enterprise. RMS alleges that the defendants never intended to honor the subcontract agreement, but rather used RMS as a "pass-through" to fulfill the requirement to employ women-owned business enterprises. RMS sued the defendants for fraud in the inducement, breach of contract, and breach of the covenant of good faith and fair dealing. Both parties moved for partial summary judgment. The defendants moved for dismissal of RMS' fraud in the inducement claim, which was granted. RMS moved to declare the subcontract agreement a lump sum contract (as opposed to a time and materials contract), which was also granted.

Both parties have also filed *Daubert* motions. RMS has moved to exclude the expert testimony of Stuart Lipofsky, the defendants' project manager, and portions of the expert report of Terence Rodgers, the defendants' damages expert. The defendants have moved to exclude the opinion of Michael Betters, RMS' damages expert. I will address each in turn.

## DISCUSSION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)

> the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The inquiry consists of three general areas: (1) the testimony must be "helpful," which dovetails with the relevance requirements of Fed. R. Evid. 401–403; (2) the expert must be qualified by knowledge, skill, experience, training, or education; and (3) the testimony must be reliable and fit the facts of the case. *Lyman v. St. Jude Medical S.C., Inc.*, 580 F. Supp. 2d 719, 722 (E.D. Wis. 2008).

Under the third part of the analysis, the court examines whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The court acts "as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001). To help ensure the reliability of expert testimony, the court considers, for example, whether the theory can be and has been verified by the scientific method through testing, whether the theory has been subjected to peer review, the known or potential rate of error, and the general acceptance of the theory in the scientific community. *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996).

Finally, despite the court's role as a gatekeeper, expert testimony is liberally admissible under the Federal Rules of Evidence. *Lyman*, 580 F. Supp. 2d at 723. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

3

**RMS' *Daubert* Motions**

1. *Stuart Lipofsky*

Stuart Lipofsly is a professional engineer employed by J.F. Shea Construction, Inc. as a Project Manager. (Decl. of Stuart Lipofsky ("Lipofsky Decl.") ¶ 1, Docket # 126.) Lipofsky is the Project Manager for the Indianapolis Deep Tunnel Project and has held that position since September 2011. (*Id.*) The defendants seek to have Lipofsky testify as to the interpretation of the subcontract, construction industry practice regarding labor unions, and the defendants' damages on its counterclaim. RMS objects to Lipofsky providing expert testimony on these subjects. I will address each in turn.

    1.1    Testimony as to Interpretation of the Subcontract and Construction Industry Practice Regarding Labor Unions

In its Rule 26(b) disclosure, the defendants state that Lipofsky will provide expert testimony in support of the fact that the subcontract between the parties was a time and materials contract. (Declaration of Matthew M. Fernholz ("Fernholz Decl.") ¶ 1, Exh. A, Docket # 86-1.) RMS argues that Lipofsky cannot provide expert testimony as to the interpretation of the contracts. My ruling on RMS' summary judgment motion that the subcontract was a lump sum agreement renders testimony from Lipofsky on this question unnecessary. Thus, RMS' motion with respect to this testimony is moot.

In its Rule 26(b) disclosure, the defendants also state that Lipofsky will provide testimony in support of the following point:

> Because experienced contractors are well aware that the work on their projects covered by a union labor agreement will be done by union members they may have no experience working with, they would not be surprised to have workers on their payroll they have never worked with before, especially on a project away from the contractors' home base where the labor will come from local union halls in the area of the

4

> project. So there is nothing unusual at all about RMS having workers on its payroll that it had never before met or heard of.

(Fernholz Decl. ¶ 1, Exh. A.) RMS argues that Lipofsky is attempting to impermissibly render expert testimony on the interpretation of the parties' contract. The defendants argue that Lipofsky is not acting as an expert in the interpretation of the parties' contract; rather, he is testifying about construction industry practices concerning union labor project agreements and the hiring of union laborers by subcontractors.

It seems that the defendants are offering Lipofsky's testimony on this matter to counter RMS' argument that the defendants were impermissibly "dumping" employees onto RMS' payroll, thus evidencing fraud in the inducement. Because I granted the defendants' motion for summary judgment dismissing RMS' fraud in the inducement claim, Lipofsky's testimony on this matter is unnecessary. Thus, RMS' motion with respect to this testimony is also moot.

### 1.2 Testimony as to the Defendants' Damages on its Counterclaim

The defendants allege that due to RMS' non-performance under the subcontract, they were forced to retain a more expensive subcontractor, Steppo Supply and Construction, Inc., to replace RMS on the job. The defendants state that Lipofsky will offer testimony as to their damages on the counterclaim. RMS argues that Lipofsky should be precluded from testifying as a damages expert because during his deposition he was unable to articulate the basis for the damages amount. The defendants argue that although expert testimony is not required in this area, Lipofsky should be allowed to present his analysis regarding the difference between what the defendants had to pay Steppo and what it would have been required to pay RMS.

5

The defendants make no attempt to establish Lipofsky's qualifications to testify as to the defendants' damages. Lipofsky is the defendants' project manager; however, it is unclear how he is qualified to render expert testimony regarding damages. Did Lipofsky negotiate the contract with Steppo? Does Lipofsky perform accounting work for the defendants? Further, when questioned about how the defendants' arrived at their damages number at his deposition, Lipofsky could not explain what the numbers on their damages spreadsheet represented. (Fernholz Decl. ¶ 5, Exh. E at 104-07, Docket # 86-5.) It is unclear how Lipofsky's testimony on this matter will assist the jury in understanding the evidence when Lipofsky cannot explain how he arrived at the ultimate damages number. Thus, Lipofsky will not be permitted to testify as an expert as to the defendants' damages claim. For these reasons, RMS' motion as to this testimony is granted.

2. *Terence Rodgers*

Terence Rodgers is a Director and Shareholder in the Boston office of the Berkeley Research Group in which he has provided consulting services to a variety of public and private corporations as well as state and federal agencies for over 30 years. (Fernholz Decl. ¶ 7, Exh. G at ¶ 7, Docket # 87.) Rodgers consults on business issues, including financial analysis and lost profits. (*Id.*) Rodgers has been retained by the defendants to provide his expert opinion regarding the damages recoverable by RMS attributable to the defendants' actions. Rodgers was further asked to review and analyze the expert report of RMS' damages expert, Michael Betters. (Exh. G at ¶ 2.)

6

### 2.1 Testimony as to Fraud in the Inducement Claim

In paragraph 5 of his report, Rodgers opines that RMS has no damages on its fraud in the inducement claim. (*Id.* ¶ 5.) Given the dismissal of RMS' fraud in the inducement claim, paragraph 5 should be stricken. Thus, RMS' motion as to this testimony is granted.

### 2.2 Testimony Regarding Damages if Subcontract was Terminated for Convenience

In paragraphs 3-4 Rodgers opines that if the defendants were found to have terminated the subcontract for convenience, RMS' damages would amount to $22,425.57. (*Id.* ¶¶ 3-4.) Paragraphs 30-37 further explain how Rodgers reached his damages number based on the provision of the subcontract that allowed the defendants to terminate the contract for convenience. (*Id.* ¶¶ 30-37.) Finally, in paragraphs 56-59, Rodgers attacks the opinion of RMS' damages expert for failing to consider the terms of the subcontract that allowed the defendants to terminate the agreement, such as the provision allowing for termination for convenience. (*Id.* ¶¶ 56-59.)

RMS seeks to strike these paragraphs and preclude Rodgers from testifying about those subjects at trial. RMS argues that Rodgers' methodology for calculating RMS' damages on its breach of contract claim was flawed because he uses Section 18's liquidated damages provision—which applies to termination for convenience—for calculating the losses to RMS, despite the fact that the defendants never invoked this provision. The defendants argue that "the point" of Rodgers' testimony on this issue is that "RMS did not have an absolute right to complete the subcontract, and that at any time S-K could have terminated it for no reason at all, and all RMS would have been entitled to was damages under the termination for convenience provision." (Def.'s Br. in Opp. at 11, Docket # 128.)

Section 18 of the subcontract provides that the contractor "may at any time and for any reason terminate this Agreement for Contractor's convenience upon three (3) days notice or immediately upon any termination of Contractor." (Fernholz Decl. ¶ 8, Exh. H at 9, Docket # 87-1.) However, there is no evidence that the defendants invoked this provision to terminate the subcontract. Rather, in a letter sent to Tammy Miramontes, the president of RMS, Lipofsky stated that the defendants were "providing notice under Section 17 of the Subcontract that RMS is in material breach of the Subcontract and is considered to be in default." (Fernholz Decl. ¶ 9, Exh. I at 1, Docket # 87-2.) Section 17 of the subcontract addresses material breaches of the agreement and provides for liquidated damages, in addition to "other and additional damages," including direct, indirect, incidental, or consequential damages. (Docket # 87-1 at 9.) Because there is no support in the record for utilizing section 18 of the subcontract to calculate the defendants' damages, paragraphs 3-4 and 30-37 of Rodger's report should be stricken. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir.1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record.").

Finally, paragraphs 56-59 should similarly be stricken. In these paragraphs, Rodgers criticises RMS' damages expert for failing to establish an independent review of the subcontract and to determine what remedies the defendants could have invoked, such as the provision providing for termination of the subcontract for convenience. It is unclear, however, why RMS' damages expert should be faulted for failing to speculate about how the defendants could have terminated the agreement if there is no support in the record for that scenario. As such, RMS' motion as to this testimony is granted.

**The Defendants' *Daubert* Motion**

1. *Michael Betters*

Michael Betters is a Certified Management Accountant and has been operating Betters & Associates, S.C. since 1992. (Declaration of Michael Betters ("Betters Decl.") ¶ 2, Exh. 1, Docket #119-1.) Betters has worked as a tax preparer and provided outside accounting services for RMS since May 2005. (*Id.*) Betters, along with Tammy Miramontes, began calculating RMS' projected loss from the Indiana Deep Tunnel Project in March 2012. (*Id.*) Betters provides an expert report as to RMS' lost profit damages stemming from the defendants' alleged breach of the subcontract.

The defendants challenge Betters' report principally on the grounds that the methodology Betters used to calculate RMS' lost profits is unreliable and therefore inadmissible. Specifically, the defendants challenge Betters' opinion that RMS' labor costs on the project would have constituted 28.43% of the total contract sum. The defendants further challenge Betters' opinion that RMS would have achieved a profit of 26.3% (which Betters revised to 22.75%) on the subcontract.

The defendants argue that Betters "cherry picked" the data he used in determining that labor costs would have constituted 28.43% of the total contract sum. The defendants further argue that Betters failed to consider empirically supported alternative data and methodologies. They argue Betters failed to calculate labor costs by estimating the amount of hours it would take to complete the subcontract; did not apply all of the elements that comprised RMS' historical expense ratios from the Milwaukee Deep Tunnel Project to check his work; and opined RMS would have achieved a profit of 26.3% (again, which Betters revised to 22.75%) on the subcontract despite the fact that RMS had never

9

performed at that level. The defendants also argue that the 26.3% profit figure came from the "say-so" of Miramontes and Wilinski, who testified that RMS could perform the $6.785 million subcontract for $5 million, rather than from any sort of statistical analysis.

Betters' methodology for calculating RMS' labor costs and expenses, and thus ultimately RMS' profitability, is unclear. As stated above, my role is a "gatekeeper" to ensure that the expert's testimony is reliable. An evidentiary hearing will be useful in making that determination. Thus, I will reserve judgment on the defendants' *Daubert* motion pending an evidentiary hearing.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that RMS' *Daubert* motion to exclude the testimony of Stuart Lipofsky as to interpretation of the subcontract and construction industry practice regarding labor unions (Docket # 84) is **DENIED AS MOOT** and RMS' *Daubert* motion to preclude Lipofsky from testifying as an expert as to the defendants' damages on its counterclaim is **GRANTED**. RMS' *Daubert* motion striking paragraphs 3-5, 30-37, and 56-59 from the expert report of Terence Rodgers and precluding Rodgers from testifying on those subjects is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will hold an evidentiary hearing as to the defendants' motion to strike RMS' damages expert, Michael Betters. (Docket # 89.) The Clerk of Court will contact the parties to arrange scheduling this hearing. Three days before the hearing, the parties are to submit a letter indicating the names of the witnesses that will appear and an estimate of the amount of court time the hearing will take.

Dated at Milwaukee, Wisconsin this 22nd day of April, 2016.

                                        BY THE COURT:

                                        *s/Nancy Joseph*
                                        NANCY JOSEPH
                                        United States Magistrate Judge