UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RMS OF WISCONSIN, INC.,

    Plaintiff,

    v.                                                               Case No. 13-CV-1071

S-K JV and J.F. SHEA CONSTRUCTION,
INC.,

    Defendants.

---

## ORDER ON MOTIONS *IN LIMINE*

---

In preparation for trial, the parties in the above-captioned case each filed numerous motions *in limine*. (Docket # 169, 176.) Several of the motions were decided at the pretrial conference. (Docket # 190.) There are nine outstanding motions *in limine* to be resolved: first, both RMS and the defendants have filed a motion *in limine* regarding the admissibility of a six-page document created by David Olson; second, both RMS and the defendants have filed a motion *in limine* regarding whether Tammy Miramontes and Rick Wilinski can offer testimony regarding RMS' damages; third, RMS has moved to allow Michael Betters to testify as a fact witness; fourth, the defendants move that Stuart Lipofsky should be allowed to testify about practices in the construction industry regarding union labor; fifth, the defendants move to dismiss RMS' claim for breach of the covenant of good faith and fair dealing; sixth, the defendants move to exclude evidence of breach of contract based on a March 16, 2012 settlement agreement signed by the parties; and seventh, the defendants move to exclude evidence of breach of contract based on Section 3 of the subcontract. I will address each of these motions in turn.

*The David Olson Document (RMS' Motion # 2; Defendants' Motion # 7)*

RMS filed a motion *in limine* seeking an order prohibiting the admission into evidence a six-page document created by David Olson of J.F. Shea shortly before the May 10, 2016 *Daubert* hearing. The defendants state that the six-page document summarizes information contained in a 108-page document. The 108-page document is S-K's internal estimate for RMS' scope of work on the project. The document takes line items of S-K's estimate that appear on various pages relating to labor and summarizes them in an Excel spreadsheet to present the total number of hours that S-K estimated it would take to complete the scope of work called for by the subcontract with RMS. (Docket # 184 at 6.)

RMS argues that the supporting documents Olson relied on were not produced in discovery and it has not had the opportunity to depose Olson on the meaning of the numbers and acronyms in his chart. At the hearing, RMS argued that the document should be excluded as a sanction for the defendants' failure to produce it in discovery. Sanctions pursuant to Fed. R. Civ. P. 37 "may only be imposed where a party displays 'wilfulness, bad faith, or fault.'" *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (quoting *Philips Medical Systems Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992)).

To find that the sanction RMS requests is appropriate, I would need to make a preliminary finding that the defendants did not respond to the discovery request or responded to it in bad faith. RMS made a request in May 2014 for "all versions of the 'Contract Items and Unit Prices' relating to the Deep Tunnel Connector Project. Production should include, but is not limited to, documents corresponding to the attached Exhibit B." (Docket # 180-4.) The attached Exhibit B is a document entitled "Contract Items and Unit Prices." The defendants argue that they responded with a document entitled "Contract

Items and Unit Prices," which was another version of the document RMS referenced in its discovery request. It is clear what the defendants provided was responsive to RMS' demand, but what remains unclear is whether the wording of the demand also called for the production of the information that is the subject of the 108 pages. The first sentence of the request supports the defendants' reading of the demand. The second, more broader sentence could support RMS' reading of the demand; however, even after reviewing the demand, the "Contract Items and Unit Prices" document, and the 108 pages, this remains unclear. Accordingly, I do not have the factual basis to exclude the summary as a sanction.

The defendants argue that the six-page document is admissible as a summary to prove content under Fed. R. Evid. 1006 and that under that rule, the summarized documents need not be produced in discovery.

Fed. R. Evid. 1006 provides as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

In *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005), the court stated that Rule 1006 requires only that the summarized documents be made available to the opposing party at a "reasonable time." The court stated that the rule does not say that the summary itself must be made available to the opposing party. *Id.* The court further stated, however, that "[n]o federal rule is needed" to "empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial." *Id.* The court found that 30 days before trial was sufficient time for

3

counsel to have "spot checked the summaries for accuracy" and if the "spot check" revealed inaccuracies, to move to exclude them from the trial unless the inaccuracies were promptly corrected. *Id.* Thus, the timing of the disclosure in itself does not provide grounds for exclusion in this case.

RMS argues, however, that it does not understand the meaning of the numbers in the chart, "has no idea" what the acronyms in the chart stand for, and had the documents been turned over during discovery, it could have deposed Olson for clarification. (Docket # 169 at 11.) Given the circumstances of the disclosure of the 108 pages, I will allow RMS to depose Olson for the purpose of "spot checking" the summary for accuracy. I recognize that trial is a matter of days away and will not be adjourned. However, in the interest of avoiding trial by surprise, which is the purpose of discovery, I find this remedy appropriate.

*Testimony of Tammy Miramontes and Rick Wilinski Regarding RMS' Damages (RMS' Motion # 3; Defendants' Motion # 6)*

RMS has moved to allow Miramontes and Wilinski to offer testimony as to RMS' damages, including lost profits. The defendants conversely have moved to exclude Miramontes and Wilinski's testimony regarding RMS' lost profits. RMS argues that under Wisconsin law, the owners of a company may testify as to losses sustained by their business. The defendants argue that because Wilinski is not an owner of RMS, he cannot testify as a lay witness about lost profits. Additionally, the defendants argue that neither are qualified to offer testimony as to lost profits.

"In the realm of lost profits, lay opinion testimony is allowed in limited circumstances where the witness bases his opinion on particularized knowledge he possesses

4

due to his position within the company." *Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 862 (7th Cir. 2009). For example, "the owner of an established business with a documented history of profits may testify to [her] expectation of continued or expanded profits when that opinion is based on [her] 'knowledge and participation in the day-to-day affairs of [her] business.'" *Id.* (internal quotation and citation omitted). This is allowed because the testimony is tied to the witness' personal knowledge. *Id.* A lay witness with "'special knowledge of the business and its operations may also testify as to the facts of the business that underlie profit expectations' but 'may not make inferences from the data . . . .'" *Id.* at 865 (quoting *R.I. Spiece Sales Co. v. Bank One, N.A.,* No. 1:03–CV–175–TS, 2005 WL 3005484, *1 (N.D. Ind. Nov. 9, 2005)).

As one court explained, there is a "fine line between lay and expert testimony." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, No. 1:11-CV-190, 2014 WL 554565, at *4 (N.D. Ind. Feb. 11, 2014).

> "[L]ay witnesses could testify where lost profits arose from an impairment to the existing operations of the business. They would be doing nothing more than describing the normal workings of the enterprise. Their testimony was, in essence, a reconstruction of what would have transpired, based upon the existing level of acting, 'but for' the wrongful conduct.
>
> Where, however, lay witnesses seek to go beyond the existing business and opine upon future sales, they are no longer supplying particularized knowledge derived from their positions in the business. Instead, they are engaging in an economic analysis. Their testimony must consider comparable products or services, the activities of competitors, pricing, demand for the product or service, and the ability to meet that demand. In contrast to testimony that is a snap-shot of a business at the time of an injury, an opinion that incorporates future sales assumptions is an assessment of a relevant market. Evaluating conditions in a market is not based upon knowledge of the internal workings of a business; it is analysis requiring specialized knowledge. This should be the exclusive province of expert testimony."

*Id.* (quoting Martin G. Gilbert, *Proving Lost Profits Through Lay Opinion Testimony—Is the Back Door Still Open?*, 22 Franchise L.J. 19 (Summer 2002)).

Thus, as to Miramontes, she will be allowed to testify "as to the facts of the business that underlie [her] profit expectations" but will not be allowed to "make inferences from the data." *See R.I. Spiece*, 2005 WL 3005484 at *1. While she can testify as to her personal knowledge as to the workings of RMS, she may not cross the line into expert testimony by giving economic analysis.

As to Wilinski, I do not find the fact he is not an owner of RMS fatal to his ability to testify. At the hearing, counsel for RMS stated that Wilinski did much of the preliminary research into the Indianapolis Project and participated in the decision making as to whether to enter into the subcontract. While it is often the owner of the business that seeks to testify under Rule 701, the cases do not turn on one's title within the company. Rather, what matters is that the individual has "special knowledge of the business and its operations." *See id.* Thus, similar to Miramontes, Wiliniski will be permitted to testify as a lay witness under Rule 701 as to the facts of the business underlying his profit expectations but will not be allowed to make inferences from the data. *See id.* Nor will Wilinski be allowed to engage in economic analysis.

*Testimony of Michael Betters as Fact Witness (RMS' Motion # 4)*

RMS sought to introduce expert testimony of its accountant, Michael Betters, as to RMS' future lost profits. For the reasons explained in the *Daubert* decision, I excluded Betters' lost profits opinion. (Docket # 168.) RMS now moves to allow the lay testimony of Betters as to RMS' historical economic performance. Surely Betters cannot offer expert testimony through the cloak of a lay witness. Recall that I already found that Betters' expert

6

Case 2:13-cv-01071-NJ   Filed 06/09/16   Page 6 of 12   Document 191

opinion as to RMS' lost profits was not based upon sufficient facts or data and was not the product of a reliable methodology under *Daubert*. And RMS did not seek to qualify Betters as an accounting expert. So he also cannot offer expert testimony as an accountant.

However, at the hearing, counsel stated that Betters would testify as to RMS' past profitability to counter expected cross-examination of Miramontes that on the face of RMS' balance sheets, it did not appear very profitable. I will reserve ruling on this motion until after Miramontes testifies at trial.

*Testimony of Stuart Lipofsky Regarding Construction Industry Practices (RMS' Motion # 5)*

At the hearing, I granted RMS' motion to allow evidence of the defendants' "dumping" employees onto RMS' payroll. The defendants counter that because this evidence is admitted, I should re-examine my ruling excluding the expert testimony of Stuart Lipofsky regarding construction industry practices of using union employees. The issue of Lipofsky's expert testimony was not argued at the hearing. Thus, the parties should be prepared to address this issue at the continued hearing on June 13, 2016.

*Dismissal of RMS' Claim for Breach of the Covenant of Good Faith and Fair Dealing (Defendants' Motion # 2)*

The defendants have moved to dismiss RMS' claim for breach of the covenant of good faith and fair dealing, arguing that under Indiana law, it has no cause of action. RMS argues that the defendants cannot use a motion *in limine* to dismiss a claim. It further argues that the defendants waived the choice of law provision as to the application of Indiana law and under Wisconsin law, it has a legitimate cause of action. Finally, RMS argues that even if the defendants did not waive the choice of law provision, Wisconsin law should apply for public policy reasons.

7

Whether Wisconsin or Indiana law applies is dispositive of whether RMS' claim for breach of the covenant of good faith and fair dealing can continue. While Wisconsin implies a duty of good faith and fair dealing in every contract, *Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071, 1082 (E.D. Wis. 2000), Indiana does not, *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). Indiana, rather, implies such a covenant into contracts where the parties have an agency relationship, such as insurance contracts. *See Allen*, 766 N.E.2d at 1163. For this reason, if Indiana law applies, RMS does not have a proper cause of action for breach of the covenant of good faith and fair dealing.

RMS argues that the defendants cannot use a motion *in limine* to dismiss a claim. I disagree. As Judge Griesbach stated in *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-C-1046, 2013 WL 6255700, at *1 (E.D. Wis. Dec. 4, 2013), even if the relief sought should have been filed as a motion for partial summary judgment or a motion to dismiss, "it makes little sense to ignore the issue and proceed to trial without resolving it" when the party "did not waive the argument by failing to raise it on summary judgment, and if it is right on the law, it will significantly narrow one of the few issues remaining for trial." Once again, if the defendants are right on the law, the cause of action effectively does not exist under these circumstances under Indiana law.

I do not agree that the defendants waived the choice of law provision. At the hearing, RMS noted several instances in which the defendants purportedly relied on Wisconsin law to show that they have always acquiesced in using Wisconsin law. Several of those instances, however, related to the fraud in the inducement claim, such as the arguments related to the use of the crime-fraud exception to override the attorney-client privilege. (Docket # 57.) As to the breach of contract action, the defendants argued that Indiana law

8

applied based on the choice of law clause found in the subcontract (Docket # 123 at 10) and I agreed that Indiana law applied to RMS' breach of contract claim (Docket # 150 at 8). Although I agree that it would have been more prudent and efficient for the defendants to have argued that under Indiana law RMS' claim was futile at the time RMS moved for leave to file a third amended complaint, I do not agree that the defendants waived the contractual provision by failing to raise it at that time. Additionally, the parties stated at the hearing that the addition of the claim did not require further discovery.

I also do not find that public policy dictates the use of Wisconsin law in this case. In *Bush v. Nat'l Sch. Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (1987), the Wisconsin Supreme Court explained that while parties are permitted to stipulate to the applicable law in the contract, this principle of "party autonomy" cannot be permitted to override "important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded." The court further acknowledged that while a "precise delineation of those policies which are sufficiently important to warrant overriding a contractual choice of law stipulation is not possible," it stated that in general, "statutes or common law which make a particular type of contract enforceable, e.g., usury laws, or which make a particular contract provision unenforceable, e.g., laws prohibiting covenants not to compete, or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party, are likely to embody an important state public policy." *Id.* at 643, 407 N.W.2d at 887.

The *Bush* court goes on to list a "survey of decisions" that found laws embodying public polices which warrant overriding the parties' contractual choice of law clause, including (1) prohibitions of covenants not to compete; (2) unconscionability doctrines; (3)

9

fair dealership laws; (4) boxing licensing schemes; (5) state bankruptcy laws; (6) contractor licensing schemes; (7) statutes of frauds; (8) usury statutes; and (9) insurance laws barring suicide exception clauses. *Id.* at 643 n.1, 407 N.W.2d at 887. RMS does not cite, and I have not found, any Wisconsin law stating that breach of the covenant of good faith and fair dealing falls into this category of "sufficiently important" policies. Further, although RMS argues that the covenant of good faith and fair dealing protects a weaker party against the unfair exercise of superior bargaining power by another party, this was not the case here. While RMS may be a smaller business, it is not unsophisticated. For these reasons, I do not find Wisconsin public policy dictates the use of Wisconsin law as to the breach of the covenant of good faith and fair dealing claim.

In sum, I find that given the choice of law provision in the parties' subcontract, Indiana law applies to RMS' breach of the covenant of good faith and fair dealing claim and under Indiana law, the claim must be dismissed. Thus, I grant the defendants' second motion *in limine*.

> *Evidence of Breach of Contract Based on March 16, 2012 Settlement Agreement (Defendants' Motion # 4) and Evidence of Breach of Contract Based on Section 3 of Subcontract (Defendants' Motion # 5)*

The defendants argued that based on a March 16, 2012 agreement entitled "Final Adjustment to Progress Pymts thru 3/09/12" signed by the parties, S-K owed nothing to RMS through March 9 based on the agreement, and because S-K paid 100% of the charges on the invoices RMS gave it after March 9, RMS cannot base any breach of contract claim on the contention that S-K failed to pay money owed to RMS. Similarly, the defendants argue that Section 3 of the subcontract contains a clause that states the "acceptance of partial payment shall constitute a release by Subcontractor in favor of Owner, Contractor

10

and its surety of any claims which arose during the performance of the Work for which payment is made, except for written claims properly submitted to Contractor." Thus, the defendants argue that RMS cannot argue that any failure to pay by S-K was a breach of contract.

In its response brief, RMS argues that it signed the "Final Adjustment to Progress Pymts thru 3/09/12" agreement under duress and submits a declaration from Miramontes where she states that she felt forced to sign the agreement or her company would "have gone under." (Docket # 181.) However, at the hearing, RMS changed course and argued that it was not seeking damages through March 9 but rather wants to include evidence of the circumstances surrounding the signing of the "Final Adjustment to Progress Pymts thru 3/09/12" agreement. RMS further argued that the settlement agreement itself is evidence of breach of contract.

As to the duress argument, Indiana does not recognize economic duress as a defense. *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1417 (7th Cir. 1986). For this reason, RMS will not be permitted to present evidence that the agreements were signed under duress. As to using it for any other purpose, admission is governed by the relevancy rules of Fed. R. Evid. 401, which will be determined based on the record developed at trial.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that I will reserve ruling on the following motions: RMS' Motion # 4 regarding the lay testimony of Michael Betters and RMS' Motion # 5 regarding the expert testimony of Stuart Lipofsky.

**IT IS FURTHER ORDERED** that as to RMS' Motion # 3 and Defendants' Motion # 6, Tammy Miramontes and Rick Wilinski will be permitted to offer lay testimony as

outlined above; Defendants' Motion # 2 is granted and RMS' claim for breach of the covenant of good faith and fair dealing is dismissed; and as to Defendants' Motion # 4 and #5, RMS is not permitted to introduce evidence of duress.

Dated at Milwaukee, Wisconsin this 9th day of June, 2016.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge